## D. W. Parker v. The State.

### No. 2779.     Decided December 9, 1903.

**1.—Local Option—Information—Sale—Variance.**

In T. County, where the local option law was in force, the proof showed that one M. and several other parties joined together for the purpose of buying a cask of whisky from a distillery located and operated in that county, each contributing a part of the money and getting a part of the whisky; the information alleged the sale to one of the parties only. Held no variance between allegation and proof, each having purchased his portion.

**2.—Disqualification of Juror—Established Opinion.**

The mere fact that a juror had formed an opinion as to the guilt or innocence of defendant from reading newspapers or hearsay would not per se disqualify him. It must be such an opinion as would influence him in finding a verdict. Held, under subdivision 13, article 673, Code of Criminal Procedure, such conclusion must be "established," and the test is, can the juror give a fair and impartial verdict from the law and facts; if so, he is competent; if not, incompetent. See dissenting opinion of Presiding Judge Davidson on this proposition.

Appeal from the County Court of Titus. Tried below before Hon. P. H. Rogers, County Judge.

Appeal from a conviction for violation of local option; penalty, a fine of $25 and twenty days confinement in the county jail.

The case is fully stated in the opinion.

*Etheridge & Baker* and *Ralston & Ward,* for appellant, filed able and interesting brief.

*Howard Martin,* Assistant Attorney-General, for the State.—Under the local option law of this State, a person can manufacture intoxicating.

liquor in prohibited territory for his own use, or for the purpose of selling it in any non-prohibited territory, but he is prohibited from selling it in any prohibited territory.

Appellant has violated the local option law which is in operation in Titus County; he sold to Miller two and one-half gallons of whisky, and received the purchase price thereof from Miller; he delivered it to him through his agent Horn; appellant sold the whisky and not a warehouse receipt, that said receipt was in effect an order for the whisky. Appellant owned the whisky at the time he sold it, but he could not deliver it until he had paid or caused to be paid the taxes due thereon to the government. The government was a pledgee of the whisky and stood in the position of a mortgagee in possession of pledged property. Appellant possessed the title to the liquor and had a right to sell the same and was entitled to possession thereof, and could deliver it to the purchasers as soon as the revenue due thereon was paid to the government.

BROOKS, JUDGE.—They have local option in Titus County, and appellant had a distillery in said county. In one end of his house was the distillery, and in the other a warehouse presided over by a storekeeper placed there by the United States government. The whisky was run into the storeroom, and after going through a refining process was placed by this storekeeper in casks. For each of these casks a certificate was issued to appellant, which certificate called for a cask of whisky corresponding to the number mentioned in the certificate. Upon presentation of this certificate, together with evidence of payment of United States internal revenue tax, the holder of the certificate would receive the cask of whisky. Louis Miller, the alleged purchaser, with Wigginton and several others bought one of these certificates from appellant, under the following circumstances: Miller desired to purchase two gallons of whisky. Appellant refused to sell him whisky under any sort of consideration, but it was finally agreed between them that if sufficient amount of money was gotten together to pay the United States revenue tax—which was $1.10 per gallon, the casks containing ten gallons of whisky—that he (appellant) would transfer, for the further sum paid of $14, a certificate which would call for the delivery of a ten-gallon cask of whisky, as soon as evidence of the payment of the United States tax was produced. Appellant Wigginton and others agreed to take the ten gallons, and to this end undertook to raise $25—$11 to go to the United States government and $14 to appellant. Miller, the alleged purchaser, and Wigginton met appellant at his residence after supper. There was some trouble in raising the money, and Miller finally agreed to take two and one-half gallons of the whisky, and paid $6.25 to appellant on this nocturnal visit. Wigginton paid the remainder, less $2.50, and the next morning made up the $2.50 and delivered that to appellant. Money was sent to Dallas, the internal revenue tax paid, the receipt returned to the warehouseman, the certificate

was transferred by appellant to the parties, and Wigginton secured the cask, carried it to an appointed place, where the whisky was divided between the purchasers, Millers receiving his two and one-half gallons. It is contended there is a variance between the allegations in the information and the evidence, to wit, that Miller was purchaser, and the proof; that is, the sale should have been alleged to all the parties purchasing, and not to one of them. Under the circumstances stated we are of the opinion there was no variance, and that Miller was the purchaser of the two and one-half gallons.

Error is assigned upon the action of the court impaneling the juror Wilhite. The bill of exceptions shows affirmatively that appellant had exhausted his challenges, and Wilhite sat on the jury over his objections, the court refusing to sustain his challenge for cause. The circumstances attending the examination of the juror were as follows: He was asked if from hearsay or otherwise he had formed an opinion as to the guilt or innocence of defendant, and answered that he had formed such opinion. He was then asked if that opinion was such as would require evidence to remove it. He answered this in the affirmative. He was then asked if he would go into the jury box with that opinion if he was selected on the jury, and he stated he would. On cross-examination by the State, he said he could give defendant a fair and impartial trial if he was selected on the jury. He was then asked if that opinion was such as would influence his action in rendering a verdict. He said it would not. On redirect examination he stated it would take evidence to remove the opinion that he had, and that the opinion was as to the guilt or innocence of the defendant. He was then asked if he did not vote the prohibition ticket at the recent election. He answered that he did. Cause for challenge was interposed and overruled. Appellant had exhausted his challenges, and the juror sat on the trial. The court did not err in refusing to set aside the juror. It is true he had formed an opinion; but the bill does not show whether this opinion was formed from hearsay or from talking with the witnesses. If it was from hearsay or reading newspaper reports, the mere fact that he had an opinion would not per se disqualify him. It must be such an opinion as would influence him in finding a verdict. In order to disqualify a juror on account of conclusion as to the guilt or innocence of defendant, as provided in subdivision 13 of article 673 of the Code of Criminal Procedure, "such conclusion must be established," and the ultimatum of the matter is, can the juror give a fair and impartial verdict upon the law and facts? If so, he is competent; if not, he is incompetent. To disqualify a juror on account of a conclusion in his mind as to the guilt or innocence of the accused, the conclusion must be such as is not only "established," but such "as will influence him in finding his verdict." In commenting upon this question, in Suit v. State, 30 Texas Crim. App., 519, the following language was used: "The juror does not disclose the facts that influenced him in forming his

opinion. It is manifest he did not receive his information from the witnesses, because he did not talk with them about the case. He met defendant several times, but does not state whether he discussed the facts with him. If he did, the opinion may have been favorable to defendant. Upon this, however, the record is silent. The juror swore that he could render a fair and impartial verdict upon the law and the evidence. The mere fact that the juror has established in his mind a conclusion of guilt or innocence of the party on trial is not a sufficient cause for disqualification." In Adams v. State, 35 Texas Crim. Rep., 295, it was said: "That the answers of said jurors, in connection with the qualification of the court to the bill of exceptions, shows, that those of said jurors who had formed any opinion in the case had done so, not from having heard any witness state the facts, but from rumor and hearsay; and they further declare, that notwithstanding any opinion then entertained as to the guilt or innocence of appellant, they could give appellant a fair and impartial trial on the evidence in the case." See, also, Keaton v. State, 41 Texas Crim. Rep., 621; Johnson v. State, 21 Texas Crim. App., 368; Kennedy v. State, 19 Texas Crim. App., 629; Post v. State, 10 Texas Crim. App., 591. The bill of exceptions in this case does not show from what sources the juror received his information upon which his conclusions were formed; but states that, notwithstanding said conclusion as to the guilt or innocence of defendant, he could give defendant a fair and impartial trial, and would do so if selected on the jury. We do not understand that because the juror may not change a pre-existing opinion until he hears something, would per se disqualify him. If so, then the fact that he had an opinion at all would disqualify him, because no rational mind could change an opinion without hearing something converse to that opinion, or having something brought to bear upon his mind changing that opinion. In other words, an opinion per se, is not a disqualification. If the juror can give defendant a fair and impartial trial, as required by the Constitution of this State, he is a qualified juror, and a pre-existing opinion that will not influence his action in returning a verdict is not a disqualification. So to hold would be placing a premium upon ignorance and a disqualification upon intelligence. In our opinion, the court did not err in holding that the juror was qualified. The judgment is affirmed.

*Affirmed.*

DAVIDSON, PRESIDING JUDGE (Dissenting).—I can not agree in the conclusions of my brethren affirming this case. The bill of exceptions renders it certain that it would require evidence to overcome the conclusion in the juror's mind of the guilt or innocence of appellant. I am of opinion that the Bill of Rights is superior to the statute; and it guarantees the accused "a trial by an impartial jury." This juror was partial if his answers are to be taken as the criterion of his mental status. Certainly he was not "impartial;" he was not in a condition to give appellant

45 Crim.—22.

the benefit of the presumption of innocence and reasonable doubt, as the law and his oath require he should. Both of these legal propositions were concluded in his mind, and he declared it would take evidence to change that conclusion. His oath required him to try the case on the facts adduced on the trial, giving defendant the benefit of the presumption of innocence and reasonable doubt; yet he states, it would take testimony to change his already formed conclusion before hearing the facts. Suit v. State, 30 Texas Crim. App., 319, is quoted. That opinion was written by the writer. The juror in that case stated he had an opinion which it would require evidence to remove, if the evidence was the same on the trial as he had heard it was; and if it was the same on the trial as he had heard, it would influence him. The bill in that case left the matter in that condition. Nothing is shown as to whether the facts on the trial were the same as he had heard they were. If the bill of exception in that case had shown the evidence introduced upon the trial was the same as that which had produced the conclusion in his mind, it occurs to me that the ruling would have been different. Be that as it may, the bill of exceptions in that case fails to show this court, and it may have failed to enlighten the court below, as to the similarity of the facts which produced the impression upon the juror's mind with those adduced upon the trial. This case is totally unlike that. Here the juror had his mind concluded; and there was no qualification or contingency about it; and it was so fixed that it would take evidence to remove that conclusion. The right to the "impartial" jury is guaranteed by the Bill of Rights, and neither legislative action nor judicial construction can change a partial juror into one that is "impartial." When the mind of the juror is made up beforehand, it is absolutely immaterial whence the reasons or causes therefor, or what induced that conclusion—he is disqualified. The sources of information may be looked to in order to test the mental status of the juror under such circumstances, but it does not change the fact of the partiality if once that conclusion has been fixed; that is, established in the mind of the juror. That conclusion, if established, is just as disqualifying when made up from reports, rumors and newspapers, as on the facts, provided the conclusion is established to the extent of requiring evidence to remove it. It is wholly immaterial how or why that conclusion becomes established. If it be established, the matter is settled, and neither the Legislature nor the court can constitute the juror "impartial." I believe the judgment should be reversed, and therefore I dissent.