## Bob Johnson v. The State.

### No. 3431.   Decided February 7, 1906.

**1.—Murder in First Degree—Change of Venue—Affidavit of Defendant—Compurgators, Absence of.**

In a case of murder where defendant had filed his individual affidavit for change of venue, stating that he was unable to obtain compurgators, but the court qualified defendant's bill of exception by stating that there were creditable witnesses who would have signed as compurgators, etc., there was no error in the court's action in refusing to hear any evidence on said affidavit.

**2.—Same—Continuance—Imputing Crime to Third Party.**

Where upon trial for murder the defendant's application for continuance set out testimony of the absent witness to the effect that the paramour of one T. had money which she stated T. gave her, and asked the absent witness for change of one of the bills she had, etc., and that said T. had been one of the hands around the oil mill in which the killing occurred. Held, that such testimony would have been inadmissible as original evidence to connect T. with the homicide, and thus exonerate defendant.

**3.—Same—Charge of Court—Murder in Second Degree—Confession.**

Where upon trial for murder the defendant's confession was used in evidence in connection with other evidence, and which showed clearly that deceased was killed while he was asleep, and for the purpose of robbery, there was no error in not charging on murder in the second degree.

**4.—Same—Predicate for Confession—Charge of Court.**

Where upon trial for murder a proper predicate was laid for the admission in evidence of defendant's confession, and the court charged the jury that if they should find these confessions were induced by hope or fear they should disregard them ; and the evidence, if any, tending to suggest either the theory of hope or fear of defendant in making the confession was so remote that the jury were fully warranted in holding that they were freely made, there was no error.

**5.—Same—Jury and Jury Law—Challenge for Cause.**

Where upon trial for murder a juror who was challenged for cause which was overruled, and then peremptorily challenged, which exhausted defendant's peremptory challenges and he was forced to accept other jurors to try his case ; and the record showed that the juror, who was thus peremptorily challenged had never heard any of the evidence in any previous trial of the case, or talked to any witness therein ; that he had never heard from any source what purported to be the testimony in the case ; and that his opinion was based on hearsay, was not fixed or established, and that if selected to try the case he would wholly disregard such opinion and would not be influenced thereby, etc., there was no error.

**6.—Same—Conversations and Impressions of Jurors—Challenge for Cause.**

Where upon a trial for murder a juror stated that he had an opinion about the guilt or innocence of defendant from a conversation he had had with a juror who sat upon a former trial of the case, and other impressions he received from reading newspapers and conversations with other parties, but who upon further examination by the court stated that he had no fixed or established opinion from such impressions, and that the same were not based upon any talks had with a witness ; that he had no knowledge of the facts ; and defendant's bill of exceptions did not show what said conversation was which the juror had with one who sat upon a former trial, there was no error in overruling defendant's challenge for cause.

**7.—Same—Death Penalty—Sufficiency of Evidence.**

Where upon trial for murder the confession of defendant showed that he killed the deceased while sleeping and for the purpose of getting his money, a conviction assessing the death penalty will not be disturbed.

Appeal from the District Court of Erath. Tried below before Hon. W. J. Oxford.

Appeal from a conviction of murder in the first degree; penalty, death.

The opinion states the case. The former appeal in this case will be found in the 47 Texas Crim. Rep.

*Ben Palmer* and *B. E. Cook,* for appellant.—On question of crime by other party, Dubose v. State, 10 Texas Crim. App., 230; Kunde v. State, 22 id., 75. On question of challenge for cause, Rothschild v. State, 7 Texas Crim. App., 519; Ward v. State, 19 id., 664; Powers v. State, 23 id., 42; Giebel v. State, 28 id., 151; Withers v. State, 30 id., 383.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—This is the second appeal. In this as on the former appeal, appellant was allotted the death penalty. (Johnson v. State, 88 S. W. Rep., 223.) The evidence in this record is widely different from that presented on the former appeal. Much of the evidence with reference to confessions contained in the former record was not placed before the jury on the second trial. Nor did appellant put any testimony before the jury.

When the case was called for trial appellant requested the court to change the venue, filing his individual affidavit that he could not obtain a fair and impartial trial; and further stated that he was unable to obtain compurgators. The court qualifies this bill of exceptions by stating that there were credible witnesses, white and black, who would have signed as compurgators, if the facts justified such affidavit, and that he, as judge, informed both of appellant's counsel that they could file their affidavits. This they declined to do, and the court refused to hear any evidence. We believe that, under the rulings of the court, this was correct. Turner v. State, 14 Texas Ct. Rep., 36; O'Neal v. State, 14 Texas Crim. App., 588, and authorities there cited.

Appellant sought a continuance on account of the absence of Felix Price, who was shown to have been in the State of Illinois. By him he desired to prove that shortly after the alleged homicide a negro prostitute was seen in the town where the killing occurred with quite a sum of currency bills; and that she was the mistress of one Tyson, shown to have been one of the hands around the oil mill, in which the killing occurred; and that this negro prostitute asked the absent witness for change for one of the bills. Not having it, he accompanied her to the town of Dublin, in order to secure change for the bill. This matter is presented in an entirely different form on this appeal than on the former. Tyson was used as a witness on the other trial, and was not so used on this trial. It is a well settled rule that, where the defendant can show another party was placed in such relation

to the homicide, and with motives and reasons for committing the homicide, this can be shown where the party on trial is seeking to exculpate himself from punishment by reason of the fact that the other party may have done the killing. This has been well settled since Dubose v. State, 10 Texas Crim. App., 230. However, in order to be admissible, it must be such testimony as could be used as original and not as impeaching evidence. The mere fact that this woman was the paramour of Tyson, and had money which she stated her white husband gave her (referring doubtless to Tyson) is not sufficient, standing alone, to connect Tyson with the homicide to the exoneration of appellant. That of itself is not sufficient to show that in fact she secured the money from Tyson, that Tyson secured it from deceased, or that he killed him for the purpose of robbery. In other words, as the motion for continuance presents this matter it is too remote, intangible, and is not original but hearsay testimony. We are therefore of opinion that the application for continuance was properly overruled.

There is a contention that the court should have charged the law applicable to circumstantial evidence and murder in the second degree. On the former appeal we reversed the judgment, among other things, because the law of murder in the second degree was not charged. The evidence upon which that ruling was based is not included in this record. There is no evidence on this appeal tending to raise the issue of murder in the second degree. Appellant's contention seems to be based upon the idea that if the jury should disregard appellant's confession, the case would be one of circumstantial evidence. It has been the universal rule, so far as we are informed, in this State, that where the confession is used, this takes the case out of the rule that applies in cases of circumstantial evidence. This being true, a charge on murder in the second degree was not required by the facts. Independent of the confession, it would have been a very serious question, and perhaps it would have been necessary to give the law of murder in the second degree in charge to the jury, for in that state of case it would have been one of circumstantial evidence with an unexplained killing, or rather a killing could be inferred from such circumstances as would not necessarily indicate murder upon express malice. But all the facts taken in connection with the confession, show clearly that it was a killing of deceased while he was asleep and for the purpose of robbery. These conclusions are based upon the present record, which as before stated, is entirely different from the record on the former appeal. So we are of opinion that it was not error to omit the charge on murder in the second degree.

In regard to the confessions we are of opinion that they were properly admitted, those made to sheriff Creswell as well as to the district attorney Chandler. A proper predicate was laid, and the court also instructed the jury that if they should find these confessions were induced by hope or fear they would disregard them in considering their verdict. We see no error in this. The confession was clearly admissible; and

the evidence, if any, tending to suggest either the theory of hope or fear on the part of appellant in making the confession was so remote that the jury were fully warranted in holding they were freely and voluntarily made. In regard to this part of the record we would also state that the evidence is different from what it was on the former appeal.

Quite a number of exceptions were reserved to the action of the court in regard to the empanelment of the jury. The bill which presents the issue stronger than the others in favor of appellant is that in regard to the juror Whiteacre, as contained in the fourth bill. On his voir dire he stated that he had heard a good deal about the case, but he had no such opinion, from hearsay or otherwise, as to the defendant's guilt or innocence, as would influence his action in finding a verdict in case he was taken on the jury. Defendant's counsel then elicited from the juror that he had talked with McMahan, who had served on a former jury which had given appellant the death penalty; that this conversation occurred soon after McMahan got home from the former trial, and that McMahan had told him a right smart about the case. He said he had heard others talk about the case, and that he had read some of the reports in the newspaper, and from what he had heard and read he had formed an opinion as to the guilt or innocence of the defendant. Upon being further questioned by appellant's counsel this juror stated that from what he had heard and read he believed defendant was guilty, and if the killing occurred as he understood it did, defendant ought to be hanged. Appellant challenged this juror for cause. Before ruling upon this challenge, the court further questioned the juror, and in reply to the court's questions, he stated: "He had never heard any of the evidence in either of the former trials of the case; that he had never talked to any witness in the case, that he had never heard from any source what purported to be the testimony in the case; that his opinion was based on hearsay, and the reports contained in the newspaper; that his opinion was not a fixed or an established one, but was merely an impression made from what he had heard and read; that if selected to try the case he would wholly disregard such opinion, and would not be influenced in any way thereby in arriving at his verdict, but would try the case solely and exclusively on the law as given in the charge of the court and the evidence introduced; and that he could and would try the case as fairly and impartially as if he had never heard anything about it." Whereupon the court overruled appellant's challenge, and appellant then promptly challenged this juror, and he did not sit upon the case. The ruling of the court in regard to this juror is properly raised by reason of the fact that he exhausted his challenges, and two jurors sat upon the trial whom he challenged for cause but which was overruled. After examining the bills of exception in regard to the two jurors who sat upon the trial, we think the court's action was correct in overruling appellant's cause for challenge to them. But under the rulings of this court since Loggins v. State, 12 Texas

Crim. App., 73, this record properly presents for revision the action of the court in forcing appellant to exhaust a peremptory challenge on Whiteacre. For a discussion of this matter, see Keaton v. State, 41 Texas Crim. Rep., 621, where this language is used: "In Loggins' case, 12 Texas Crim. App., 73, White, presiding judge, delivering the opinion of the court said: "As stated concisely in Holt v. State, 9 Texas Crim. App., 571, it is that, unless objections is shown to one or more of the jury who tried the case, the antecedent rulings of the court upon the competency of jurors who have been challenged and stood aside will not be inquired into in this court; but, if an objectionable juror is forced upon defendant after exhausting his peremptory challenges, then he will be entitled to have the action of the court reversed as to any juror against whom objection was urged which should have been sustained." Recurring to the juror Whiteacre, the question is, whether or not the court was in error in compelling appellant to exhaust a peremptory challenge upon him, for if not there was no error in the ruling. If there was, then there was error, because appellant should have had the right to use the peremptory challenge exhausted on Whiteacre on one of the two jurors forced upon him over his challenge for cause, after he had exhausted his challenges. It will be noted here, there were eight challenges, practically the same as that with reference to Whiteacre; but we have only selected the juror Whiteacre to elucidate the proposition. So, if there is error in regard to Whiteacre, there is error in regard to several other jurors. There has not been entire harmony in the court with reference to the question involved in regard to the disqualification of jurors where they have expressed an opinion. Be this as it may, the opinions have settled this matter, and it is no longer an open question. It will be noticed that Whiteacre testified that he had an opinion which was not based on having talked with any witness, without knowing the facts, and it was an impression he had received from what he had heard and from reading newspaper reports, and talking in a general way. The nearest approach this juror had to ascertaining the facts was a conversation he may have had with McMahan who sat on the former trial, and assessed the death penalty. What he ascertained from McMahan was not disclosed. McMahan was not used as a witness in connection with the attempted disqualification of Whiteacre as a juror. So, we are left to conjecture as to what may have occurred between Whiteacre and McMahan, except what Whiteacre himself states. From this he states that he had formed no opinion that would influence him in his action. He states positively that he had no fixed or established opinion in regard to appellant's guilt or innocence, and that he could go upon the jury and render as fair and impartial a verdict as if he had not heard the matters mentioned. From this statement we hold that the court did not err in overruling the cause for challenge. Tellis v. State, 42 Texas Crim. Rep., 574; Parker v. State, 8 Texas Ct. Rep., 865. These two cases discuss this question fully and freely, and show the

disagreement of the court in regard to the matter. As before stated, the law is settled adversely to appellant's contention; and therefore, we hold the court did not err. What is said in regard to this juror can be appropriately said as to six or seven other jurors. We selected this particular bill of exceptions, because we believe it presented the grounds of objections strongest in favor of appellant's contention.

We are of opinion that the evidence is sufficient to justify the conviction. A brief statement of the facts as contained in this record shows that appellant and deceased started from Stamford, in Jones County, southward on the Texas Central Railway. Without giving the details of this trip, they reached Dublin at night, and after knocking about town a little, found themselves at the oil mill. They sat by the engine, warmed themselves, and finally obtained permission to sleep in the seed house. Deceased excavated a hole in the seed, laid down, and went to sleep. Appellant fixed himself nearby, and laid down. After laying there an hour or more, he got up, went out of the room, found a spade handle, picked it up, returned to where deceased was sleeping, and struck him four licks about the head, killing him. He then took what money deceased had (a few dollars) got the "grip" of deceased, and left. He was found in Waco shortly afterwards, in possession of the clothes of deceased that were in the grip. He was arrested, and made two confessions about as above stated. In his confession he stated that he killed deceased for the purpose of getting his money. We believe the jury were justified in inflicting the extreme penalty of the law.

Finding no error such as requires a reversal of the judgment, it is affirmed.

*Affirmed.*