## HALL et ux. v. PICKETT. (No. 9146.)

Court of Civil Appeals of Texas. Galveston. May 3, 1928.

Rehearing Denied June 14, 1928.

1. **New trial** ⟵⟶44(3)—**Jury held not chargeable with misconduct for receiving and considering deed containing recital of immaterial fact which was already before jury (Rev. St. 1925, art. 2193).**

In action to have deed declared a mortgage wherein defendants' counsel, without objection, questioned plaintiff as to' recital in deed that consideration therefor was agreement by defendants to represent plaintiff against pending prosecution for statutory offenses committed against his daughters, *held*, that under Rev. St. 1925, art. 2193, jurors cannot be charged with misconduct because they received and considered, while deliberating upon the verdict, the deed in question containing such recital, where they neither discussed nor considered such recital in arriving at their verdict.

2. **Trial** ⟵⟶307(3)—**Permitting jury to have deed containing recital objectionable to plaintiff held not error, where plaintiff introduced deed and was questioned as to recital without objection.**

In suit to have deed declared a mortgage, wherein plaintiff introduced deed and defendants' counsel questioned plaintiff without objection with regard to recital in deed that it was given in consideration of defendants representing plaintiff in prosecution on statutory offenses committed by plaintiff against 'his daughters, *held*, that court did not err in permitting jury to have deed with them in their deliberation upon the verdict.

3. **Appeal and error** ⟵⟶931(3)—**Appellate court must assume that all issues of fact were found in favor of prevailing party.**

Court of Civil Appeals must assume in support of the judgment that all issues of fact raised by the evidence were found in favor of party in whose favor judgment was rendered.

4. **New trial** ⟵⟶42(2)—**Refusal of new trial for disqualifiaction of juror alleged to have discussed evidence in case and expressed opinion held not error under the evidence.**

Refusal of motion for new trial, based on disqualification of juror because juror had be-

fore becoming juror discussed case and formed an expressed opinion on the merits, *held* not error under evidence showing that if juror had disclosed such facts on his voir dire examination, and further stated as testified by him that he had formed no opinion which would influence him in reaching a verdict, .he would not be disqualified nor subject to challenge for cause.

Appeal from District Court, Anderson County; Ben F. Dent, Judge.

Action by J. C. Hall and wife against J. D. Pickett and others, wherein such other defendants filed disclaimers. Judgment for defendant named, and plaintiffs appeal. Affirmed.

Justice & Sigler, of Athens, and Clay Cotten, of Palestine, for appellants.

E. V. Swift, of Palestine, and R. E. Seagler, of Houston, for appellee.

PLEASANTS, C. J. This is a suit for the recovery of land brought by appellants against J. D. Pickett, P. S. Colley, and G. M. Irving. The petition contains the usual allegations in a suit of trespass to try title, and further alleges, in substance, that the deed under which defendants claim title, and which was executed by appellants, while in form a deed, was understood and intended by all of the parties to be a mortgage for securing the payment by appellant J. C. Hall of $1,500. attorneys' fees due by him to the grantees in the deed. Plaintiffs tendered to defendants the $1,500 and interest for the security of which they alleged the instrument was executed, and prayed for recovery of the title and possession of the land, and for cancellation of the deed. The defendants Colley and Irving filed disclaimers, and defendant Pickett answered by general demurrer, general denial, and plea of not guilty, and special denial of the allegation that the deed executed by plaintiffs was intended as .a mortgage, and averred that it was understood and intended by all the parties to the deed that it was an absolute conveyance of an indefeasible title to the land. The trial in the court below with a jury resulted in a verdict and judgment in favor of defendant Pickett.

The evidence amply supports the verdict, and appellants do not' complain of the judgment; on the ground that the evidence is insufficient to sustain the finding of the jury that the deed executed by appellants conveying the property to appellee was not intended as a mortgage.

The appeal is predicated upon four propositions, which present but two questions; the first being whether the trial court should have granted a new trial because of the alleged error of the court in permitting, and the misconduct of the jury in receiving and con-

---

⟵⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

sidering, while deliberating upon their verdict, the deed in question, which contains a recital that the court had ruled was not admissible as evidence. The second question is whether the trial court should have granted a new trial on the ground of the disqualification of one of the jurors.

The deed from plaintiffs to defendants Pickett and Colley and Irving conveying the land in controversy recites as the consideration for the conveyance an undertaking and agreement by the grantees, as attorneys, to represent and defend appellant J. C. Hall against prosecutions pending against him in the district court of Anderson county, "which prosecutions are based upon statutory offenses alleged to have been committed by the said J. C. Hall upon and against the person of his daughter or daughters." Upon cross-examination of J. C. Hall these recitals in the deed were read to him in the hearing of the jury, and he was questioned as to the nature of the charges against him. No objection was made by appellant to this recital in the deed being introduced in evidence, nor to the questions asked the witness in reference thereto. Thereafter, when Mrs. Hall was being cross-examined, counsel for appellee again attempted to read this portion of the deed in the hearing of the jury and to cross-examine Mrs. Hall with reference thereto. Appellants thereupon objected to the introduction in evidence of this recital in the deed and to any cross-examination of Mrs. Hall concerning the recital, on the ground that the evidence was immaterial and of such inflammatory nature as to prejudice the jury against the plaintiffs. These objections were sustained by the court, and the defendant was not permitted to read to the witness the recital in the deed as to the nature of the charges against J. C. Hall, nor to question Mrs. Hall with reference thereto. No motion was made by appellants to strike out the previous testimony of J. C. Hall with reference to the nature of the charges against him, nor to withdraw from the consideration of the jury the recitals in the deed which had been previously read to them.

After the jury had received the charge of the court and were deliberating upon their verdict, and before they had reached an agreement, they made request for the written evidence that had been presented to them, which included this deed. This request was granted by the trial court over the objection of appellants' attorneys that the clause in the deed before quoted was irrelevant and immaterial and so inflammatory as to prejudice the minds of the jury against plaintiff, "and for the further reason that it was allowing the jury to receive, read, and consider evidence not introduced during the trial of said cause." The court overruled these objections and permitted the jury to have the deed.

Upon the hearing of the motion for a new

trial; all the jurors testified as to the consideration given by them to the deed. Two of the jurors, Mr. A. B. Link and Mr. W. A. Calloway, testified that they did not know the nature of the charge against J. C. Hall until they read it in the deed, but upon cross-examination Mr. Link testified that he remembered the cross-examination of Mr. Hall by appellee's attorney, Mr. Seagler. The witness says:

"Yes, sir; I remember you, Mr. Seagler, reading straight down through all that consideration expressed in the deed, just as I found it when I saw the deed myself. I stated that I read the deed in the jury room. The purpose on my part in sending for the deed was to see, or find out, whether Mr. Hall had deeded this property outright to Mr. Pickett. I just wanted to see the form of the deed and the signatures on it. And we also called for the duplicate of the tax receipts, and to see who had give it in for taxes, and who had paid the taxes on it last year. We called for the tax rendition of Mr. Hall and Mr. Pickett for 1927, and also for the tax receipts for 1926 taxes, called for all of that at the same time. No, sir; the question as to what Mr. Hall was charged with was not discussed by the jury in their deliberations of this case, none whatever. I did not consider that in arriving at my verdict. The deed was not read out loud in the jury room. Anybody that wanted to read the deed could do it. The principal thing was to see the form of the deed and the signatures to it, and to see whether it was a deed outright to Mr. Pickett for this land, with all signatures to it."

All of the jurors testified that the nature of the charge against Mr. Hall was not discussed in the jury room, and each juror testified that in reaching his verdict he gave no consideration to the nature of the charges against Mr. Hall, and was not influenced by the character of these charges in arriving at his verdict.

[1] We do not think this evidence raises any issue of misconduct on the part of the jury. No juror is shown to have said or done any improper thing. They were acting within their rights in calling for the written evidence in the case, and they cannot be charged with misconduct because the deed contained a recital of an immaterial fact which was already before them but which they neither discussed or considered in arriving at their verdict. Article 2193, Revised Statutes (1925); Ry. Co. v. Lunsford (Tex. Civ. App.) 183 S. W. 112; Dunman v. Lumber Company (Tex. Civ. App.) 252 S. W. 276; Clark v. Scott (Tex. Civ. App.) 212 S. W. 728.

[2] Nor do we think the trial court erred in permitting the jury to have the deed with them in their deliberations upon the verdict. It must be borne in mind that this recital was in the deed executed by appellants and which they were seeking to have declared a mortgage. The introduction of the deed in evidence was a necessary part of the plaintiffs'·

case. The deed was put in evidence and the objectionable recital read in the hearing of the jury to the appellant J. C. Hall when he was on the witness stand, and he was questioned in regard to the recital without any objection on the part of either of appellants. Upon this state of facts, the trial court could not have properly refused the request of the jury for the deed on any of the grounds upon which appellants objected to the jury being allowed to have the deed. All that appellants could have demanded was an instruction or admonition by the court to the jury not to consider the immaterial recital in the deed. No request for such instruction was made by appellants, and from the uncontradicted testimony of all of the jurors such instruction was wholly unnecessary.

Upon the question of the disqualification of one of the jurors, the record shows that Mr. Russel Taylor, one of the jurors who tried the case, when examined upon his voir dire swore that he had not discussed the case nor heard it discussed; that he had no bias or prejudice against any of the parties, and had not formed nor expressed an opinion regarding the case. Upon motion for rehearing the qualification of this juror was attacked upon the grounds that he had, before he became a juror, discussed the case, had formed and expressed an opinion on its merits, and was biased in favor of the defendant Pickett. On the hearing of the motion the following affidavits and testimony were adduced:

Miss Adelaide Petit made the following affidavit:

"That on the first or second Sunday in April, 1927, she was out riding with Russel Taylor, J. H. Brewer, Polly Pridgen, and Mossie Hassel. That they had been to the Carey Lake oil well, and on their way back she and Polly Pridgen and Russel Taylor were sitting on the front seat of the car, and that Russel Taylor said that he noticed where a fellow was suing Mr. Pickett to recover some land that he had sold to him, but he did not see where the fellow had a chance to win. Taylor said it was like this: This fellow was arrested, but could not make bond, so Mr. Pickett took the case and cleared the men; then, in order to pay Mr. Pickett, the fellow deeded him this land. Mossie Hassel said it was a homestead, and Taylor then asked her if she meant to say one could not sell a homestead; if so, why have one? Mossie Hassel answered that she could not explain this, because she did not know the law, nor the circumstances in this case. Then Russel Taylor said that he understood that if Mr. Pickett should die that they would have a mighty hard time taking the land away from his heirs.

"Affiant further says that about two weeks after the above conversation, while she and Russel Taylor were out driving in the city of Palestine, that they drove by the J. D. Pickett home and saw Mrs. Pickett in the yard, and Taylor remarked that J. D. Pickett was a fine fellow and that he hoped Pickett won his suit for the land against Hall.

"Affiant further says that she never communicated the above conversation to the lawyers or either of the lawyers in this case until after the trial of the case of Hall v. Pickett."

An affidavit made by Miss Mossie Hassel corroborates this statement of Miss Petit as to the conversation between them and Mr. Taylor during the ride on the second Sunday in April, 1927.

The juror Mr. Taylor testified:

"Yes, sir; I recall riding out with the parties mentioned in the affidavit of Mossie Hassel. I don't know whether it was the Sunday or the next Sunday after the Carey Lake well come in, but just a short time after the well come in. Well, some conversation of the kind mentioned in the affidavit did occur on that trip. I don't know exactly who brought the conversation up, or how it started, or anything about it. It was said, though, something about Mr. Pickett was being sued by Mr. Hall. I wouldn't be sure, but think Miss Mossie said she couldn't see how Mr. Pickett could win this case because it was a homestead he deeded away. I asked her then if she meant to say a fellow couldn't deed away his homestead. If a man and wife had a homestead and wanted to sell it, why they couldn't deed it away. She said she didn't know anything about it, and that was all that was said about this argument. The conversation was dropped there and nothing more said about it. We argued a little bit about the homestead law, and after that it was dropped. Yes, sir; that was a friendly conversation. We were just merely talking like on any other conversation going down there. Yes, I remember when the jurors were being questioned here in the courtroom on the day the case was called for trial that the question was asked me and other jurors about the case. I did not have that conversation in mind at the time. I did not recall this conversation at all then. My memory was refreshed the first time on that conversation about three days ago. I was in Rusk and came in, and Dad said something to me about it. Mr. Pickett had been down to see him, and he told me about it after I got back from Rusk. The fact I had had such conversation never entered by mind during my consideration of this case at any time. The conversation that I had with Miss Mossie Hassel on that occasion had nothing to do with my verdict in this case, or with me arriving at a verdict in this case. I didn't remember it until the trial was all over, till they mentioned it and told me about it. The reason I didn't tell counsel about this conversation when I was being questioned for my jury service was because I didn't remember it. That was one of my conversations—I don't remember any of the conversations, just talked about different things on the way down there and back. I didn't remember any of the conversations, and that conversation wasn't on my mind, didn't even think about it. If I had recalled it at the time, I would have disclosed it to counsel, because I didn't want to get on the jury. If I had recalled that conversation and it had been disclosed to counsel and I had been asked whether or not the fact I had had such conversation would influence me one way or the other as a juror in this case, I would have replied that it would not

influence me. I am 24 years old. I am a single man. I know Miss Mossie Hassel and Miss Adelaide Petit. I know the relationship they bear to Mr. Gus Hassel. Miss Mossie is his sister and Miss Adelaide is his niece. I was at the time I was called for jury service in this case, and am now, friendly with those girls. * * *

"The conversation referred to in Miss Adelaide Petit's affidavit as occurring about two weeks after the conversation referred to in Miss Mossie Hassel's affidavit, wherein she stated that she and I drove by the J. D. Pickett home, and saw Mrs. Pickett in the yard, and I remarked that J. D. Pickett was a fine fellow and that I hoped Pickett won his suit for the land against Hall, or any similar conversation, absolutely did not take place."

On cross-examination he testified:

"Yes, sir; I said I had the conversation the day I went to Carey Lake with those people. I heard counsel read the conversation over that we had on that trip as contained in the affidavit, and it is substantially correct.

"I read in the paper about the case of Hall v. Pickett, and heard some men discuss it; don't recall who they were, a bunch up there that messes in oil a whole lot. It was the morning after Mr. Stanley O'Flynn and Mr. Davey had some cases filed against them, and they said something about Mr. Hall suing Mr. Pickett, and there was something said, some remark made that they didn't see how Hall could get anything, that Pickett had a deed to this place and he got him out of jail over there. I didn't know what he got him out of jail for. Yes, sir; I knew when I got on this case that Mr. Pickett had gotten Mr. Hall out of jail, and knew that it had been discussed up there and that others had said they didn't see how he could beat Pickett, but I had forgotten about that; so many talking up there. No, sir; I did not tell the counsel, when he questioned me back there, that I had had any conversation with anybody about that. Yes, sir; I told you, Mr. Justice, that I hadn't had any conversation with anybody. The reason I told you that was because I had forgotten it. Yes, sir; I was asked whether I had any bias in favor of, etc., I had just forgotten all this.

"Yes, sir; at the time I was being questioned here for jury service I forgot about the conversation in the general office, didn't think about that. * * *

"No, sir; none of the parties that had discussed these lawsuits up in the general offices, I mentioned awhile ago, testified as witnesses in this Hall v. Pickett Case. Yes, sir; at the time that I was being questioned for jury service those conversations up in the general offices had slipped my mind and were not in my mind at all, absolutely. No, sir; none of those things that were said up there in the general offices about the lawsuits, or about the Pickett suit, influenced me in any way in arriving at my verdict in this case, not a bit in the world."

The contention presented by appellants is that the juror Taylor was not qualified to sit as a juror in the case because of his having discussed the case with others and formed and expressed an opinion on its merits before he became a juror, and because he was biased in favor of the appellee Pickett.

[3, 4] We must determine this question from the testimony of the juror, as we must assume in support of the judgment that all issues of fact raised by the evidence were found in favor of the party in whose favor the judgment was rendered. When the question is thus considered, it cannot be held that the trial court erred in refusing the motion for a new trial based on the disqualification of the juror. If the juror had disclosed on his voir dire examination the facts in regard to his knowledge and discussion of the evidence in the case and his expressed opinion of the case as testified by him on the hearing of the motion, and further stated, as testified by him, that he had formed no opinion which would influence him in reaching a verdict upon the evidence submitted upon the trial, he would not have shown himself disqualified to sit on the jury, and appellants would not have been entitled to challenge him for cause. Johnson v. State, 49 Tex. Cr. R. 314, 94 S. W. 224; Tellis v. State, 42 Tex. Cr. R. 574, 61 S. W. 717; Parker v. State, 45 Tex. Cr. R. 334, 77 S. W. 783.

We are of opinion that none of appellants' propositions should be sustained, and that the judgment should be affirmed.

Affirmed.

On Motion for Rehearing.

The statement in our main opinion, in discussing the question of the qualification of the juror Taylor, that, "We must determine this question from the testimony of the juror, as we must assume in support of the judgment that all issues of fact raised by the evidence were found in favor of the party in whose favor the judgment was rendered," was intended to apply to the conflicts in the testimony, especially to the conflict between the testimony of Miss Petit that Mr. Taylor, before he was selected as a juror, in a conversation with her said that appellee "J. D. Pickett was a fine man and that he hoped Pickett won his suit for the land against Hall," and Mr. Taylor's testimony that such conversation "or any similar conversation absolutely did not take place."

With this limitation of the scope and application of the above-quoted portion of our original opinion, we adhere to the conclusions therein expressed, and appellant's motion for rehearing is overruled.

Overruled.